UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD E. SAMUELS,<br><br>        Plaintiff,<br><br>     v.<br><br>HOLLAND AMERICAN LINE-USA, INC., *et al.*,<br><br>        Defendants. | No. C09-1645 RSL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. #8. After considering the parties' briefs and all supporting evidence submitted to the Court, the motion is GRANTED.

## II. DISCUSSION

### A. Factual Background

On November 22, 2008, plaintiff and his two children embarked on a seven day cruise aboard a Holland American Line ("HAL") vessel, arriving in Cabo San Lucas on November 24, 2008. Dkt. # 13-1 & 9-2, Deposition of Gerald Samuels ("Depo.") at 50; Dkt. #14 ¶¶ 1-2. Plaintiff contends that he went to Lovers' Beach in Cabo San Lucas on an independently owned "skiff boat" he rented based on recommendations of HAL employees. Depo. at 50-59. When he arrived at Lovers' Beach, plaintiff waded in the Sea of Cortez side for about five minutes, then returned to the beach. Id. at 74-75. Plaintiff then approached the Pacific Ocean side of the beach and observed people sitting on the beach and about twenty people in the

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 1

water.  Id. at 77, 81-82.  Plaintiff sat on the beach for about five minutes and observed the sea conditions, noting that the waves were three to four feet high.  Id. at 82, 86-87.  Plaintiff entered the ocean waist to chest deep and bobbed around for about five minutes, then returned to the beach for about five minutes.  Id. at 87-89.  Plaintiff then returned to the exact same place, and within a few minutes, plaintiff felt a wave, that was approximately the same height as prior waves, pull him back upside down, causing him to somersault.  Id. at 89, 91-92.  During the tumble, plaintiff was injured and he was carried to the beach by bystanders because he had lost function of his limbs.  Id. at 92-94.  He was later diagnosed with central chord syndrome, and he is considered a high-functioning quadriplegic with significant pain and limitations.  Id. at 115-16.  Plaintiff has filed suit against defendants alleging negligence.  He contends that HAL employees should have warned him of the dangers of the Pacific Ocean side of Lovers' Beach, and that had he received such warnings, he never would have entered into the water.

### B. Legal Standard on Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Where a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, there can be no genuine issue of material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Id. at 323.  Once the moving party meets the initial burden, in order to defeat the motion, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51 (2000).

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 2

### C.      Analysis

To prove his maritime negligence action, plaintiff must show that (1) defendants owed him a duty of care; (2) defendants breached that duty; (3) plaintiff was injured; and (4) defendants' breach proximately caused his injuries. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001).

An owner of a ship in navigable waters owes a duty to exercise reasonable care to its passengers. Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 172 (2nd Cir. 1983). The law does not impose a duty to warn of an obvious danger. Poston v. United States, 396 F.2d 103, 107 (9th Cir. 1968). A duty to warn passengers of a hazard requires that the carrier have "actual or constructive notice of the risk-creating condition[.]" Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989).

### 1.      No Duty to Warn Where Hazard is Open and Obvious

Courts have consistently held that there is no duty to warn of an obvious and apparent danger. Morrell & Co. v. Royal Caribbean Cruises, LTD., 534 F. Supp. 2d 1345, 1352 (S.D. Fla. 2008) (cruise ship had no duty to warn of obvious dangers of operating a dune buggy on a shore excursion); Isbell v. Carnival Corp., 462 F. Supp. 2d 1232, 1238 (S.D. Fla. 2006) (no duty to warn of obvious danger that snakes may be in the river on a cruise ship excursion involving floating down a river in a rainforest); Sun v. Gov'tal Authorities Taiwan, 2001 U.S. Dist. LEXIS 1160, 32 ("Almost any beach can be said to be 'exposed' to extreme water forces, and thus such hazards at a beach is [sic] obvious."); Cimino v. Hempstead, 110 A.D.2d 805, 805-06 (N.Y. App. Div. 1985) (no duty to warn of wave activity in ocean where water conditions were readily observable to all at the beach and plaintiff physically experienced conditions on two separate occasions); Herman v. N.Y., 94 A.D.2d 161, 163 (N.Y. App. Div. 1983) ("the value of a warning is particularly questionable where, as here, the claimant knew or should reasonably have known of the dangers posed by sandbars as a result of his diving experience and familiarity with the area.").

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 3

Here, plaintiff argues that genuine issues of material fact exist as to whether the danger presented by wading in the Pacific Ocean side of Lovers' Beach was an open and obvious danger, thereby creating a duty to warn. Dkt. #12 at 18-19. Plaintiff contends that he and his family only went to Lovers' Beach based on the recommendations of HAL employees.[1] Depo. at 59. While his children sunbathed, plaintiff waded in the Sea of Cortez side before walking over to the Pacific Ocean side of the beach. Id. at 74-75, 77. Before entering into the Pacific Ocean, plaintiff observed the sea conditions for about five minutes. Id. at 81-82. He noticed people swimming and that the waves were approximately three to four feet high. Id. at 82, 86-87. Plaintiff testified that he was a "somewhat experienced" beach goer from "living in California and taking lots of trips"; that he has "been all over the world and seen many different ocean conditions"; and that while in high school, he had "lifeguard training." Id. [Dkt. #9-2] at 83-84. After observing for about five minutes, plaintiff went into the Pacific Ocean "bobbing around in between [his] waist and chest" for a few minutes before returning to the beach. Id. [Dkt. #13-1] at 88-89. After a few more minutes on the beach, plaintiff returned to "the exact same place" and was there for a few minutes before the accident happened. Id. at 91-92.

In addition to his own testimony, plaintiff relies on the declarations of Karin Larson, a travel agent who has worked in the travel industry since 1972 (Dkt. #15), and Dwight Hutchinson, who worked in the cruise line industry from 1987 to 2000, and who currently is employed by Washington State Ferries in terminal operations (Dkt. #16). Plaintiff cites to these declarations for the proposition that it is common knowledge in the travel and cruise line industries that entering the water on the Pacific Ocean side of Lovers' Beach is extremely

---

[1] To the extent plaintiff argues that his reliance on HAL employees in directing him to Lovers' Beach created a duty to warn, or that defendants had a duty to ensure that the beach in which plaintiff was injured was reasonably safe, the Court rejects these arguments. See Wilson v. Am. Trans Air, Inc., 874 F.2d 386, 391 (7th Cir. 1989) (general promise that a trip will be "safe and reliable" does not constitute a guarantee that no harm will befall plaintiff and does not create a duty to investigate and warn). It is by no means clear that plaintiff even would be able to establish an inference that he was referred to Lovers' Beach by HAL employees. See Depo. at 40, 53, 56, 58, & 137-38.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 4

dangerous and that it has been industry standard to warn any traveler directed to Lovers' Beach to stay out of the water on the Pacific Ocean side.  Dkt. #12 at 10-11.

Fed. R. Civ. P. 702 allows an expert witness to testify if scientific, technical, or other specialized knowledge will assist the trier of fact to understand or to determine the fact in issue where the testimony is based upon sufficient facts or data.  Mr. Hutchinson's declaration does not qualify as "expert" given his lack of personal knowledge and experience of Lovers' Beach.  Mr. Hutchinson does not have a background or training in beach safety (Dkt. 20, Ex. A, Declaration of Dwight A. Hutchinson ("Hutchinson Depo.") at 4, 6, 7, 17, 49-50, 54-56); he has never personally been to Lovers' Beach and is unaware of whether any warning signs are present at the beach, in the city of Cabo San Lucas or on the docks where tourists catch water taxis (Id. at 30, 41-43); and he has not dealt with Cabo Shore excursions for more than ten years (Id. at 29).  Nor has Mr. Hutchinson established that he has the requisite knowledge on the cruise industry's standard of care for warning passengers.  See Id. at 24, 35-38, 48, 44, 58.  Accordingly, the Court strikes paragraphs 7 through 14 of Mr. Hutchinson's declaration as inadmissible testimony.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993) ("the word 'knowledge' connotes more than subjective belief or unsupported speculation").

Paragraphs 4 and 5 of the Declaration of Karin Larson are similarly stricken because she has not established that she is qualified to testify as an expert on the safety or the standard of care for cruise lines.  Dkt. #15.

Construing the facts in the light most favorable to plaintiff, the Court finds that no genuine issue of material fact exists with respect to whether a duty to warn exists.  The Court finds persuasive case authority finding that there is no duty to warn in similar beach circumstances.  In Sun, 2001 U.S. Dist. LEXIS at 31-32, plaintiffs argued that the beach in which their son died was "exposed to severe undertow, high waves, and strong surf," imposing on defendants a duty to warn of the dangers.  The court reasoned that "[s]evere undertow, high waves, and strong surf are potential dangers that can occur at almost any beach, depending on weather conditions" in concluding that "such hazards at a beach is [sic] obvious."  Id.  The court held that "the fact that Little Bay Beach was 'exposed' to severe tow, high waves and

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 5

strong surf, standing alone, does not make it a danger that required disclosure." Id. at 32. Similarly, the court in Cimino, 110 A.D.2d at 805-06 reasoned that the ocean conditions "were readily observable to all at the beach, and were in fact not only observed by Mr. Cimino but actually physically experienced by him when he entered the water on two separate occasions" before concluding that there was no duty to warn.  The court also noted that while wave conditions may have been worse on the days preceding plaintiff's injury, there was "no evidence that any similar accidents occurred on either of those dates, or even on any prior occasion." Id. at 806.

Here, plaintiff observed the wave conditions prior to entering the ocean and he physically experienced the wave conditions before the accident occurred.  Depo. at 81, 88-89. Additionally, there is no evidence that any similar accidents occurred on the Pacific Ocean side of Lovers' Beach.  The fact that an accident occurred or that there are general websites warning against the dangers of entering the water do not give rise to a presumption of a dangerous condition that imposes a duty to warn.  See Isbell, 462 F. Supp. 2d at 1237-38 (finding no duty to warn ship passenger who was bitten by a snake where it was obvious that one may encounter animals floating down a river in the rainforest during an excursion); Sun, 2001 U.S. Dist. LEXIS at 32 (concluding that the fact that a beach was exposed to severe tow, high waves and strong surf, standing alone, does not make it a danger that requires disclosure).

The Court finds that the ocean conditions at Lovers' Beach were open and obvious.  The Court further finds that there is no evidence of particularly hazardous conditions or of prior accidents at Lovers' Beach that would impose a duty to warn.  Accordingly, the Court concludes that defendants had no duty to warn of obvious conditions in the Pacific Ocean side of Lovers' Beach.[2]

---

[2] Having concluded that defendants did not have a duty to warn plaintiff of ocean conditions, the Court need not analyze defendants' other persuasive arguments that there is insufficient evidence to show that they had actual or constructive notice of the ocean conditions.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 6

### III.  CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.  The Clerk is ORDERED to enter judgment in favor of defendants and against plaintiff.

DATED this 4th day of October, 2010.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT - 7